**UNITED STATES BANKRUPTCY COURT**
DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

JOHN K. SHERWOOD
BANKRUPTCY JUDGE

(973) 645-4693
Fax: (973) 645-2606

April 3, 2020

Ciccarelli Law, PC
Jenee F. Ciccarelli, Esq.
47 Park Avenue, Suite 304
West Orange, N.J. 07052

Stern & Eisenberg, PC
Steven P. Kelly, Esq.
1040 N. Kings Highway, Suite 407
Cherry Hill, N.J. 08304

RAS Citron, LLC
Laura Egerman, Esq.
130 Clinton Road, Lobby B, Suite 202
Fairfield, N.J. 07004

**FILED**
JEANNE A. NAUGHTON, CLERK

**APRIL 3, 2020**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: *Ronnie Plasner*
Judicial Assistant

Re:    **In re Steven Content, Case No. 18-27925 (JKS)**

**LETTER OPINION**

Dear Counsel:

Before the Court are (i) a motion to set aside a sheriff's sale of real property filed by Steven Content (the "Debtor") and (ii) a motion for relief from the automatic stay filed by Wells Fargo Bank, NA.  Both motions relate to the Debtor's real property located at 522 Prospect Avenue, Hackensack, NJ 07601 (the "Property").  The sheriff's sale that the Debtor seeks to set aside occurred on January 11, 2019 when the bankruptcy case was dismissed but while the Debtor's motion to vacate dismissal was pending.  The Debtor's current plan filed on January 31, 2020

Page 2

April 3, 2020

seeks to cure arrears due to Wells Fargo of over $150,000 over 44 months – a $3890.73 per month plan payment - while paying an additional $1860.87 per month to Wells Fargo outside the plan. The Debtor says that he is prepared to pay more than $26,000 to Wells Fargo immediately to catch up on missed payments. Wells Fargo maintains that it purchased the Property at the sheriff's sale and, thus, the Debtor cannot use Chapter 13 to get the Property back. It seeks stay relief to evict the Debtor.

## I.    Facts and Procedural History

In 2005, the Debtor and his non-filing spouse granted Wells Fargo's predecessor-in-interest a first mortgage on the Property. (ECF No. 69-2 at ¶ 5). On March 21, 2014, Wells Fargo filed a mortgage foreclosure complaint. Neither the Debtor nor his spouse responded to the foreclosure complaint and an uncontested final judgment of foreclosure was entered on April 15, 2016. (ECF No. 69, Ex. A).

This bankruptcy case was filed on September 7, 2018. Because the Debtor had filed a previous bankruptcy case within a year prior, he filed a motion to extend the automatic stay as to all creditors on September 10, 2018. (ECF No. 5). The Court entered an order extending the automatic stay on October 4, 2018. (ECF No. 18). On October 19, 2018, the Debtor filed his Chapter 13 plan (ECF No. 22) which relied upon the Debtor obtaining a loan modification for the Wells Fargo mortgage by March 31, 2019. Wells Fargo objected to the Debtor's plan, confirmation was denied, and the case was dismissed on December 17, 2018. (ECF No. 29).

On January 2, 2019, the Debtor filed his first motion to vacate dismissal. (ECF No. 32). A hearing for the motion to vacate was scheduled January 24, 2019. On January 4, 2019, the Chapter 13 Trustee objected to the motion to vacate dismissal. (ECF No. 33). The hearing for the Debtor's

Page 3

April 3, 2020

motion to vacate did not occur because the Debtor withdrew the motion on January 24, 2019. Ultimately, the case was reinstated on March 4, 2019 upon the Debtor's second motion to vacate dismissal of the case. (ECF No. 36). But on January 11, 2019, while the case was dismissed and the first motion to vacate dismissal was pending, the Property was sold by and to Wells Fargo at a sheriff's sale in Bergen County, New Jersey (the "Sale"). (ECF No. 69 at ¶ 12).

Apparently unaware that the Sale had occurred, on March 26, 2019, the Debtor filed a motion for approval to participate in the Court's loss mitigation program with Wells Fargo through its servicer, Ocwen Loan Servicing. (ECF No. 39). That motion was uncontested, and the Court granted it on April 30, 2019. (ECF No. 40). The period for loss mitigation was extended on August 27, 2019. (ECF No. 45). There was no objection to the Debtor's application seeking to extend the loss mitigation period. The record does not reflect what, if anything, happened during the loss mitigation period. Were documents submitted by the Debtor and considered by Ocwen? Did the Debtor make any adequate protection payments? If so, why would Ocwen engage in loss mitigation with the Debtor if the Debtor was not the owner of the Property?

On October 11, 2019, the Court confirmed the Debtor's Chapter 13 plan. (ECF No. 49). Wells Fargo did not object to confirmation of the plan, which called for a loan modification by the end of March 2019.

Given this history of applications to the Court by the Debtor for relief that was inconsistent with Wells Fargo's ownership of the Property, the obvious question is – why didn't Wells Fargo object? Based on a review of the docket, Wells Fargo's failure to respond or object to any of Debtor's filings during 2019 may be explained by the fact that it did not receive proper notice from the Debtor. Wells Fargo's attorney filed a notice of appearance on October 9, 2018 providing an

Page 4

April 3, 2020

address for notice to Laura Egerman, Esq. in Boca Raton, Florida. (ECF No. 20). Apparently, this notice of appearance was ignored. Wells Fargo's Proof of Claim listed Ocwen Servicing as the party to be noticed in the case and provided a P.O. Box located in West Palm Beach, Florida. (Claim 2-1). Both of the Debtor's motions to vacate dismissal noticed Ocwen using the incorrect P.O. Box—instead of providing service to P.O. Box 24605 as it was listed on Wells Fargo's proof of claim, the Debtor provided service to P.O. Box 24738. (*See e.g.* ECF No. 35-6). Furthermore, both of the motions to vacate dismissal were apparently served on an attorney who did not appear as counsel to Wells Fargo in this case. In the Debtor's motion for approval to participate in the Court's loss mitigation program, notice to Ocwen was once again deficient and notice was given to the wrong attorney. (ECF No. 39-3). The same improper service was provided in the Debtor's application for an extension of the loss mitigation period. (ECF No. 44-4).

On January 31, 2020, the Debtor filed a modified Chapter 13 plan. (ECF No. 67). Wells Fargo subsequently filed its motion for stay relief. (ECF No. 69). It is through this pleading that the Court (and apparently the Debtor) learned of the Sale. On February 21, 2020, the Debtor filed a certification in opposition to Wells Fargo's motion for stay relief. (ECF No. 73). It is the Debtor's position that he was unaware of the Sale until Wells Fargo sought stay relief on February 5, 2020—over a year after the Sale occurred. On February 27, 2020, the Court held a hearing regarding Wells Fargo's motion for stay relief. At the conclusion of that hearing, the Court entered an Interim Order requiring the Debtor make two adequate protection payments to Wells Fargo. (ECF No. 76). That same day, the Debtor filed a motion to set aside the Sale of the Property. (ECF No. 74). On March 18, 2020, Wells Fargo filed its certification in opposition to the Debtor's motion to set aside the Sale. (ECF No. 78). The Court held a hearing regarding the competing

Page 5

April 3, 2020

motions on March 26, 2020. At the end of that hearing, the Court requested that the Debtor file supplemental pleadings addressing whether the Debtor made the two (2) adequate protection payments to Wells Fargo that were required under the March 6, 2020 Order before making decisions on the matters. On February 27, 2020, the Debtor filed a supplemental certification in support of his motion to set aside the Sale. (ECF No. 81). The Debtor maintained that he would be immediately be making the 2 payments ordered by the Court and that he has $26,196 in funds earmarked for Wells Fargo.

**II.     Analysis**

   **A. The Debtor's Motion To Set Aside The Sheriff's Sale Is Denied.**

Chapter 13 debtors are granted broad authority to cure any pre-petition defaults through their Chapter 13 plans so long as the debtor does so within a reasonable time. *See* 11 U.S.C. § 1322(b). This is a federal right that does not exist outside of the bankruptcy context. However, § 1322(c)(1) limits a debtor's ability to cure a default regarding the debtor's principal residence so that a debtor may cure any default "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." 11 U.S.C. § 1322(c)(1). Where a foreclosure sale occurs prior to the commencement of the case, the debtor is barred from curing any prepetition arrears and may only exercise "state-law post-sale remedies" that are available. *In re Connors*, 497 F.3d 314, 321 (3d Cir. 2007). In New Jersey, once a foreclosure sale occurs the debtor has a ten-day period to object to the sale or redeem the property. *Id*. The foreclosure auction and sale start the clock regarding the time the debtor has to object to the sale or redeem the property. *Id*. at 321. In this Circuit, "a Chapter 13 debtor does not have the right to cure a default on a mortgage secured by the debtor's principal residence" once a foreclosure sale has

Page 6

April 3, 2020

occurred. *Id*. Thus, a foreclosure sale terminates a debtor's federal right to cure any pre-petition defaults. Upon the filing of a bankruptcy petition within ten (10) days of the foreclosure sale, the time to redeem may be extended by sixty (60) days under § 108. Considering all of this, it does not appear that the Debtor can set aside the Sale using conventional Chapter 13 methods.

But the Court sympathizes with the Debtor in some respects. The proposed immediate payment of more than $26,000 coupled with the proposed cure of the Wells Fargo arrears over 44 months suggests that the Debtor is committed to saving his home. Also, if Wells Fargo knew that the Debtor was back in Chapter 13 and entertained loss mitigation (and accepted loss mitigation payments if any were made), such facts would work in the Debtor's favor. The fact that Wells Fargo was the purchaser at the Sale and the Debtor is still residing at the Property is also helpful to the Debtor. But the facts have not been developed well enough for the Court to reach a conclusion concerning the extent of Wells Fargo's knowledge of the events in the bankruptcy case during 2019. The record reflects that service of some important pleadings and documents on Wells Fargo may have been inadequate. Thus, the argument that Wells Fargo remained silent when it had a duty to speak may not be compelling. Also, there is nothing in the record concerning the loss mitigation process as set forth above.

There is authority under New Jersey law to set aside a sheriff's sale on equitable grounds to prevent injustice. *See In re Ankrah,* 602 B.R. 286, 292-94 (Bankr. N.J. 2019) (discussion regarding setting aside a sheriff's sale on equitable grounds). The bottom line is that the extraordinary relief requested by the Debtor here, setting aside a state court sanctioned sheriff's sale, requires factual findings that the Court cannot make on this record. It is also worth noting that the proper procedure for this relief would be an adversary proceeding, not a motion. The

Page 7

April 3, 2020

Bankruptcy Rules require that "a proceeding to recover money or property" must be through an adversary proceeding. Fed. R. Bankr. P. 7001(1). Finally, the Court is not convinced that it has "core" jurisdiction over a proceeding to set aside the Sale on state law equitable grounds. If Wells Fargo does not consent to this Court's jurisdiction, the Debtor should be prepared to address this issue.

For these reasons, the Court denies the Debtor's motion to set aside the Sale without prejudice.

### B. Wells Fargo's Motion For Stay Relief Is Postponed For 90 Days Subject To Adequate Protection Payments By The Debtor.

Although the Sale should not be set aside at this time, the Debtor may have a good faith basis to bring an adversary proceeding seeking such relief. To be clear, the Court has no idea whether the Debtor would prevail in such an action. But in the current business and legal environment due to the impact of coronavirus, there is little harm in giving the Debtor the chance to develop facts in support of the claim and to bring it if he believes the claim has merit. Also, Wells Fargo should take the opportunity to examine its own conduct during this bankruptcy case and determine whether it makes sense to give the Debtor a chance to cure the arrears under his Chapter 13 plan. The Debtor may also have to reconsider whether he can make both the plan payment ($3890) and the monthly mortgage payment ($1860) going forward.

The 90-day adjournment of the stay relief motion is subject to the current payment of both the mortgage payments and the plan payments from February 1, 2020 forward. If the plan payment is not made, the Court would be inclined to dismiss the case. If the mortgage payment is not made, Wells Fargo can seek stay relief on short notice. The Court finds that in the interim, the mortgage

Page 8

April 3, 2020

payment is adequate protection of Wells Fargo's interest in the Property.  The Court also notes that to the extent that the Debtor remains current on his plan payments and is allowed to fulfill his Chapter 13 plan, a large amount of these payments will be turned over to Wells Fargo because these payments are primarily for the Wells Fargo cure.  Of course, Wells Fargo is free to seek stay relief at the next hearing date.  If that occurs, attorneys are advised that the Court will only consider admissible evidence as to material disputed facts.  Generally, attorney certifications do not qualify as admissible evidence.

### III.  Conclusion

Two (2) Orders shall be entered by the Court memorializing this decision.

Very truly yours,

*John K. Sherwood*

JOHN K. SHERWOOD
UNITED STATES BANKRUPTCY JUDGE

[Enclosures]